DICKINSON, Presiding Justice,
dissenting:
¶ 44. The jury found that Keir D. Sanders was insane when he entered the home of his grandparents, W.D. and Elma Crawford, and murdered Mr. Crawford in his kitchen. The same jury then somehow concluded — with absolutely no supporting evidence — that, as he walked into the bedroom to murder Mrs. Crawford, he became sane. Then, according to the jury’s verdict, at some point after the murders, but before the trial, Sanders entered a new state of insanity.[43] Interestingly, in order *511 to return its bizarre verdict, the jury was required to violate the trial court’s form-of-the-verdict instruction.
¶45. And what evidence assisted the jury in diagnosing Sanders’s mental roller coaster? It certainly wasn’t the testimony of any expert. Sanders’s experts testified he was insane when he committed both murders. The State’s expert testified he was sane when he committed both murders. No expert testified — and the State did not even suggest — that Sanders was insane when he committed the first murder, but sane when he committed the second; and this is not surprising, since the record includes not a smidgen of evidence that would support such a theory. To be clear, while I do believe the record includes sufficient evidence for the jury to have found Sanders sane, it includes no evidence or expert opinion that he was insane, and then became sane. The evidence touching on the issue of sanity was the same for both crimes.
¶ 46. During deliberation, the jurors sent the trial judge a note asking:
What is the minimum sentence for someone that is found to be insane and a danger to the public?_ If the defendant is found “not guilty” by reason of insanity BUT is a danger to the public ... [w]ffl the defendant be allowed to ever walk as a free man on the street?
This note exposes the jurors’ understandable fear that an insane Sanders might someday get loose, and almost certainly explains their irrational verdict. But juries are not free to speculate on an accused’s sanity; nor are they free to find an insane defendant sane, solely for the purpose of keeping him off the street. Because the jury’s verdict was supported by no fact or expert testimony, I would reverse it and remand this case for a new trial.
¶ 47. As a final comment, I must say I find it appalling that today, this Court sends off to prison — with no evaluation or treatment of any kind — a man who has been adjudicated insane.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. According to law, "if the jury certifies] that such person is still insane and dangerous *511 the judge shall order him to be conveyed to and confined in one of the state asylums for the insane.” Miss.Code Ann. § 99-13-7 (Rev. 2007). In returning Sanders’s verdict, the jury so found, which makes one wonder whether Sanders was competent to stand trial at all.